UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARLENE MARTINEZ,

                Plaintiff,

vs.                                         Case No.  3:11-cv-802-J-37MCR

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 18, 2006, alleging disability beginning August 2, 2006. (Tr. 171, 303-22). The Social Security Administration denied these applications initially and on reconsideration. (Tr. 28-31, 35-41). Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), which took place on March 5, 2009. (Tr. 121-59, 171). On July 30, 2009, the ALJ issued a decision denying

---

      [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 17).

Plaintiff's claim. (Tr. 168-84). The Appeals Council vacated the ALJ's decision on July 16, 2010. (Tr. 185-88). After a subsequent hearing on November 9, 2010, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 14-38, 64-120). The Appeals Council did not assume jurisdiction over the matter. (Tr. 1-6, 11-13). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1). This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. NATURE OF DISABILITY CLAIM

### A. Summary of Evidence Before the ALJ

Plaintiff claims disability due fibromyalgia, depression, carpal tunnel syndrome, back pain, and Barrett's esophagus. (Tr. 74, 363). Plaintiff was 42 years old on the date of the ALJ's decision. (Tr. 131, 303). She completed high school and has past relevant work as a pawn broker, retail store manager, and a cashier. (Tr. 110, 131-32, 349). Because of the volume of medical records and the ALJ's decision to discount various medical sources, the Court will divide its summary of Plaintiff's medical history by medical provider.

#### 1. Dr. Ulises Caraballo, M.D.

On June 30, 2006, Plaintiff began treatment with general practitioner Dr. Caraballo. Plaintiff complained of fatigue associated with chest pain and numbness of the left arm. Examination revealed tenderness of the thoracic spine, shoulder blades, and back bilaterally. (Tr. 596). A nerve conduction study dated August 9, 2006 revealed irritation of the cervical nerve roots. (Tr. 626-28). On August 17, 2006, Plaintiff was diagnosed with depression and fibromyalgia. (Tr. 592).

On September 21, 2006, Plaintiff complained of abdominal and back pain.  (Tr. 590).  On February 6, 2007, examination revealed tenderness in the back.  (Tr. 587).  On April 13, 2007, Plaintiff complained of pain from the left elbow to the hand and sinus congestion and coughing.  (Tr. 576).  On May 25, 2007, Plaintiff reported chest pain, shortness of breath, and coughing.  (Tr. 575).  On July 12, 2007, Dr. Caraballo reported tenderness and pain on examination and diagnosed fibromyalgia and bruising of the lower extremities.  (Tr. 574).

On October 18, 2007, Plaintiff again complained of pain.  (Tr. 727).  Four days later, Plaintiff returned to Dr. Caraballo with continued complaints.  (Tr. 726).  On November 13, 2007, Plaintiff was found to have tenderness throughout the lumbosacral spine and was diagnosed with fibromyalgia, insomnia, and back pain.  (Tr. 725).  Thereafter, progress notes document unchanged findings.  (Tr. 708, 714, 720-724).

Dr. Caraballo completed a Physical Residual Functional Capacity Questionnaire on January 20, 2009.  (Tr. 734-737).  Dr. Caraballo opined Plaintiff could walk one block, sit for 45 minutes at a time and for a total of less than 2 hours in an 8-hour day, and stand for 30 minutes and less that 2 hours in an 8-hour day.  (Tr. 735-36).  Dr. Caraballo diagnosed Plaintiff with fibromyalgia, severe depression, obesity, back pain, chest pain, and esophageal spasms.  (Tr. 734).  Plaintiff's primary symptoms were documented to be pain, fatigue, and dizziness.  It was reported that Plaintiff's impairments were consistent with her symptoms and functional limitations.  Dr. Caraballo opined that Plaintiff's pain and other symptoms were "frequently" severe

enough to interfere with her attention and concentration.  Dr. Caraballo opined Plaintiff was incapable of even low stress work.  (Tr. 735).

### 2.     Dr. John Moreland, Ph.D.

On June 11, 2007, psychologist Dr. Moreland began treating Plaintiff for depression, poor sleep, visual hallucinations, and feeling upset and angry.  (Tr. 752-58).  On July 23, 2007, Plaintiff reported having dreams of dying and panic attacks.  (Tr. 747).  Dr. Moreland saw Plaintiff again on August 13, 2007 and August 28, 2007.  (Tr. 744-45).

On October 9, 2007, Dr. Moreland completed a report for the Social Security Administration and diagnosed Plaintiff with major depressive disorder, severe, psychological factors affecting both physical condition, pain disorder due to both biological and psychological factors, and a mixed personality disorder.  Dr. Moreland opined that Plaintiff was incapable of functioning in an employment setting on a regular and continuing basis.  (Tr. 605-07).

### 3.     Dr. Luis Quinones, M.D.

Dr. Quinones, a psychiatrist, began treating Plaintiff on March 12, 2009.  (Tr. 839).  Plaintiff complained of depression with poor sleep, fatigue, decreased concentration, and anxiety with a history of panic attacks.  (Tr. 840).  Dr. Quinones diagnosed Plaintiff with major depressive disorder, severe, and panic disorder.  (Tr. 839).  On May 28, 2009, Plaintiff reported feeling better but was experiencing continued problems with insomnia.  (Tr. 836).  On August 25, 2009, a mental status examination revealed an anxious and depressed mood and impaired cognitive functioning.  (Tr. 833).

In a letter dated September 10, 2009, Dr. Quinones opined that Plaintiff had limitations in her social, occupational, and family functioning due to depression and anxiety. (Tr. 923). On January 21, 2010, Plaintiff reported worsening anxiety. (Tr. 886). On May 11, 2010, Plaintiff reported increased depression and paranoia. (Tr. 883).

On June 1, 2010, Dr. Quinones completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 891-98). He diagnosed Plaintiff with major depression and panic disorder. (Tr. 891). Specifically, Dr. Quinones opined that Plaintiff was markedly limited in her ability to remember locations and work-like procedures; her ability to understand, remember, and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; her ability to sustain ordinary routine without supervision; her ability to work in coordination with or proximity to others without being distracted by them; her ability to make simple work-related decisions; and, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 894-95). In addition, Dr. Quinones opined Plaintiff was markedly limited in her ability to interact appropriately with the general public; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes; her ability to respond appropriately to changes in the work setting; and, her

ability to set realistic goals or make plans independently.  (Tr. 895-96).  Dr. Quinones further opined that Plaintiff was incapable of handling even low stress work.  (Tr. 897).

### 4. Dr. David Ferriss, M.D.

Dr. Ferriss, a gastroenterologist, began treating Plaintiff on November 22, 2006.  (Tr. 554).  On January 24, 2007, Plaintiff was diagnosed with severe irritable bowel syndrome, internal hemorrhoids, and possible endometriosis.  (Tr. 549).  An upper GI endoscopy performed on April 9, 2007 revealed a tortuous esophagus, evidence of prior anti-reflux surgery, esophagitis, and non-bleeding gastropathy.  (Tr. 578).  On July 15, 2008, Plaintiff returned to Dr. Ferriss with complaints of frequent dysphagia, abdominal bloating, constipation, and chest pain.  (Tr. 693).  A colon biopsy dated October 16, 2009 revealed mild to moderate acute and chronic inflammation.  (Tr. 932).

### 5. Dr. Carlos Gama, M.D.

On June 6, 2008, Plaintiff was seen by neurologist Dr. Gama for complaints of pain in her legs, arms, and shoulders.  Dr. Gama diagnosed possible fibromyalgia, headaches, and adjustment disorder.  (Tr. 715-17).  An EMG performed on August 22, 2008 revealed a right C5-6 radiculopathy, axonal left ulnar nerve sensory and left posterior tibial motor neuropathies, and right carpal tunnel.  (Tr. 951-54).  On October 7, 2008 and January 7, 2009, examination was unchanged.  (Tr. 709-11, 820-21).

### 6. Dr. Ghaith Mitri, M.D.

On December 3, 2007, Dr. Mitri, a rheumatologist, examined Plaintiff for tenderness of the lumbar spine.  Dr. Mitri diagnosed insomnia, back pain, and possible fibromyalgia but more likely pain from severe depression.  (Tr. 761-64).

### 7. Dr. Donald Stewart, Psy.D.

On November 9, 2010, Dr. Stewart, a psychologist, diagnosed Plaintiff with major depression, generalized anxiety disorder secondary to medical conditions with panic attacks, and rule-out post-traumatic stress disorder. (Tr. 930). Dr. Stewart opined that Plaintiff's social functioning was severely restricted, her ability to complete tasks timely was poor, and she was likely to decompensate under any stress. (Tr. 929). Dr. Stewart stated that Plaintiff needed rehabilitation evaluations and training to determine the extent of her employability. (Tr. 930).

### 8. Dr. Lynda Walls, Ph.D.

On October 24, 2006, consultative psychologist Dr. Walls evaluated Plaintiff at the request of the Social Security Administration and opined she was unable to maintain a schedule due to her chronic pain and mental distress, had significant problems dealing with stress, and had some difficulties interacting and relating with others. (Tr. 520-24).

### 9. Dr. Hung Tran, M.D.

Dr. Tran evaluated Plaintiff for the Social Security Administration on November 16, 2006. (Tr. 542). Dr. Tran observed Plaintiff was in no acute distress, was very cooperative, and had no overt signs of a mental disorder. (Tr. 543). Dr. Tran observed that Plaintiff did not suffer from loss of motion, and she had no difficulty getting on and off the examination table. (Tr. 543- 44). Plaintiff made no pain complaints, had no loss of range of motion in her thoracic or cervical spine, and straight leg raise testing was normal. Plaintiff displayed reduced grip strength in her upper

extremities and claimed she was unable to lift twenty pounds using both hands. Dr. Tran observed that Plaintiff walked with a normal gait, and though she reported pain with squatting, this was in her lower back and not in her knee. (Tr. 544). Dr. Tran diagnosed Plaintiff with possible esophagus problems, pain in the back and right knee, and depression. He did not note any functional limitation. (Tr. 545).

### 10.   Dr. Val Bee, Psy.D.

On October 16, 2007, medical consultant Dr. Bee reviewed Plaintiff's file and opined that she suffered from moderate limitations in concentration, persistence, or pace. (Tr. 622). Dr. Bee reviewed the file a second time on March 15, 2010 and gave the same opinion. (Tr. 858).

### 11.   Dr. Robert Wesly, M.D.

On February 20, 2007, medical consultant Dr. Wesly reviewed Plaintiff's file and opined that she could perform light work. (Tr. 557-63).

### 12.   Dr. Ciceron Lazo, M.D.

On April 3, 2010, Plaintiff presented for a consultative examination with Dr. Lazo. (Tr. 874-79). Plaintiff had full range of motion throughout her back and all extremities and full strength in her arms, hands, and lower extremities. She was able to heel, toe, and tandem walk and squat without difficulty. (Tr. 876).

### B.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Plaintiff suffered from the following severe impairments: mild degenerative disc disease, questionable fibromyalgia, gastroesophageal reflux disorder ("GERD") with chest pain, anxiety, depression, and carpal tunnel syndrome. (Tr. 20). At step three, the ALJ found

Plaintiff did not have an impairment, or combination of impairments, that met or equaled any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[2] to perform light work,[3] except that work should not involve production quotas and only have occasional contact with the public and coworkers.  (Tr. 20-28).

At Plaintiff's hearing, the ALJ utilized the testimony of a vocational expert ("VE").  The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations.  Based on the hypothetical questions posed, the VE testified that Plaintiff's past relevant work exceeded the ability of her RFC.  The ALJ then asked the VE whether a person with Plaintiff's RFC could perform any other jobs existing in significant numbers in the national economy.  The VE replied that a person with Plaintiff's RFC could perform a significant number of jobs in the economy, such as office helper, library page, and housekeeper.  (Tr. 28-29, 110-14).  Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act.  (Tr. 29-30).

---

[2] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff raises the following three issues on appeal: (1) whether the ALJ properly considered the opinions of various medical sources (Doc. 21, pp. 17-24);  (2) whether the ALJ properly considered Plaintiff's subjective complaints of pain (Id. at pp. 24-27); and (3) whether the ALJ relied on flawed vocational expert testimony (Id. at pp. 27-29). The Court will address each of these issues.

#### 1.     Whether the ALJ properly considered the opinions of various medical sources.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's sequential process for determining disability. Bruner v. Comm'r of Soc. Sec., 2009 U.S. Dist. LEXIS 87131, 2009 WL 3052291 (M.D. Fla. 2009).  The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1986).  Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

Here, Plaintiff contends that the ALJ failed to properly analyze various medical sources contained in the record.  Specifically, Plaintiff argues the ALJ failed to give proper weight to opinions of treating physicians Drs. Quinones, Moreland, and Caraballo, and psychological consultants Drs. Walls and Stewart.  (Doc. 21, pp. 17-24). The Court will address each of these opinions.

### i. Treating Physicians Drs. Quinones, Moreland, and Caraballo

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor, 786 F.2d at 1053.  Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

Here, Dr. Luis Quinones, M.D. opined Plaintiff suffered from marked limitations in understanding and memory, sustaining concentration and persistence, social interactions, and adaptation.  (Tr. 894-96).  He also stated that Plaintiff was incapable of working, even in low stress environments.  (Tr. 897).  The ALJ discounted these

-13-

opinions because Plaintiff stated that she was able to drive, watch television, read, and attend meetings and religious services. (Tr. 25-26). However, the ALJ failed to identify how these activities conflict with Dr. Quinones' opinions. In addition, the only medical opinions that the ALJ identified as inconsistent with Dr. Quinones' opinions were from the non-examining State agency review psychologists. (Tr. 27-28); see Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physician ... when contrary to those of examining physicians are entitled to little weight"); Johnson v. Barnhart, 138 Fed. Appx. 266, 271 (11th Cir. 2005) (conclusions from non-treating, non-examining physicians are "not dispositive"); Kemp v. Astrue, 308 Fed. Appx. 423, 427 (11th Cir. 2009) (ALJ may rely on opinions of non-examining physician only when supported by other medical evidence). Thus, the undersigned finds that the ALJ failed to provide sufficient reasoning for discrediting the treating opinion of Dr. Quinones.

The ALJ also gave little weight to the opinions from treating psychologist, Dr. John Moreland, Ph.D. Dr. Moreland opined that Plaintiff suffered from severe symptoms and he did not believe she was "capable of functioning in any employment setting on a regular, consistent basis." (Tr. 605-07, 740-42). In making her determination to discredit Dr. Moreland's opinion, the ALJ erroneously believed Dr. Moreland did not submit any treatment notes with his opinion. (Tr. 26). This determination was in error as Dr. Moreland's treatment records were part of the administrative record. (Tr. 739, 743-759). Thus, the undersigned concludes that the ALJ failed to provide sufficient reasoning for discrediting the opinion of Dr. Moreland.

The ALJ further gave the opinion of treating physician Dr. Ulises Caraballo, M.D. little weight.[4] (Tr. 27). Dr. Caraballo opined Plaintiff could walk one block, sit for 45 minutes at a time and for a total of less than 2 hours in an 8-hour day, and stand for 30 minutes and less that 2 hours in an 8-hour day. Dr. Caraballo further opined that Plaintiff was incapable of even low stress work. (Tr. 735-36). The ALJ found Dr. Caraballo's opinion inconsistent with Plaintiff's response to conservative treatment in physical therapy, relatively normal physical examination findings, and Plaintiff's capacity to travel to Puerto Rico in 2009 and 2010. (Tr. 27). This minimal analysis is insufficient. The ALJ failed to cite specific evidence that showed Plaintiff had significant improvement in physical therapy to a degree that she could perform the level of light work found. In addition, although the ALJ conceded that Plaintiff's depression contributed significantly to her physical limitations (Tr. 24), it in unclear whether her psychiatric conditions were considered in conjunction with her RFC.

Thus, on remand, the ALJ is directed to re-evaluate the opinions of treating physicians Drs. Quinones, Moreland, and Caraballo and accord them proper weight.

### ii. Psychological Consultants Drs. Walls and Stewart

The ALJ also discounted the opinions of examining psychological consultants, Dr. Lynda Walls, Ph.D. and Dr. Donald Stewart, Psy.D. (Tr. 24-26). Dr. Walls opined Plaintiff would be unable to maintain a schedule due to chronic mental and physical distress and was "having some difficulties interacting and relating to others" and dealing

---

[4] The ALJ failed to identify Dr. Caraballo by name, simply referring to him as "a physician from First Coast Primary Care." (Tr. 27).

with stress.[5] (Tr. 524). Similarly, Dr. Stewart opined that Plaintiff's social functioning was severely restricted, her ability to complete tasks in a timely and appropriate manner is poor, decompensation and deterioration under duress is likely, her ability to sustain concentration, persistence and pace is poor, her ability to do work related mental activities involving understanding and memory is poor, and multiple syndromes significantly compromise social interactions and adaptive coping skills. (Tr. 929). The ALJ found these limitations were contradicted by Dr. Stewart's statement that Plaintiff needed to work closely with vocational rehabilitation and try to get back to work. (Tr. 26). However, rather than attempt to clarify the perceived inconsistency or indicate what weight was given the opinions, the ALJ simply found the opinion supported an ability to work.[6] Thus, while on remand, the undersigned directs the ALJ to re-evaluate the opinions of examining psychological consultants Drs. Walls and Stewart and accord them proper weight.

### 2. Whether the ALJ properly considered Plaintiff's subjective complaints of pain.

Plaintiff argues that the ALJ failed to properly evaluate her credibility. (Doc. 21, pp. 24-27). The standard for evaluating subjective complaints requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain/limitations arising from that condition or (3) that

---

[5] Dr. Walls also opined Plaintiff would be capable of maintaining attention and concentration, understanding and following simple instructions and directions, making simple and routine decisions, and performing simple tasks independently. (Tr. 524).

[6] The regulations pertaining to consultative examinations state the Commissioner will contact a consultative examiner if their report is inadequate or incomplete. See 20 C.F.R. §§ 404.1519p(a), (b), 416.919p(a), (b).

> the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain/limitations.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). A claimant's statements about pain or other symptoms will not alone establish disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, medical signs and laboratory findings must be present showing a medical impairment(s) that could reasonably be expected to produce the symptom(s) alleged. Id.; see also Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). When an impairment that could reasonably be expected to produce the symptoms alleged has been shown, the intensity and persistence of the symptoms, such as pain, will be evaluated based on all the evidence. See 20 C.F.R. §§ 404.1529(c), 416.929(c). The district court reviews the ALJ's credibility determination to determine whether, as a whole, it is supported by substantial evidence of record. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Though the ALJ's credibility determination cannot be so broad to prevent subsequent review, the ALJ need not cite to particular phrases or formulations in making his credibility determination. Id. at 1210. The nature of a claimant's symptoms, the effectiveness of medication, the claimant's activities, and other factors are relevant in the consideration of subjective symptoms such as pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Macia v. Bowen, 829 F.2d 1009 (11th Cir. 1987).

Here, the ALJ found that the record included objective medical findings which

confirmed the presence of several severe impairments. (Tr. 20). However, the ALJ found that Plaintiff's testimony was credible only to the extent that the alleged symptoms prevented her from performing work beyond her RFC. (Tr. 22-28).

Reviewing the record as a whole, the ALJ's conclusion -- that Plaintiff's medical evidence of record provides a basis for discounting her subjective pain testimony -- is not well-founded.[7] Thus, on remand, the ALJ must re-evaluate Plaintiff's credibility.

### 3. Whether the ALJ relied on flawed VE testimony.

The Eleventh Circuit has held that "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted). Here, as the undersigned is remanding this case for reconsideration of various medical opinions and Plaintiff's credibility, the ALJ must also re-evaluate Plaintiff's RFC and pose a proper hypothetical question to the VE.

## IV. CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) re-evaluate the medical opinions of treating physicians Drs. Quinones, Moreland, and Caraballo, and psychological consultants Drs. Walls and Stewart and accord them proper weight; (2) re-evaluate Plaintiff's credibility; (3) re-evaluate Plaintiff's RFC and

---

[7] The Court has offered an extensive review of Plaintiff's medical history in the "Summary of the Evidence" Section of this Memorandum Opinion and Order.

pose a proper hypothetical question to the VE; and (4) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. However, this Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  25th  day of February, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record